1189, ArcelorMittal France v. AK Steel Corporation. Mr. Trelo. Thank you, Your Honor. May it please the Court. These appeals involve a reissue of a patent that this Court initially considered in 2012. The District Court held that some, but not all, of the reissued claims were broader in scope than the original claims as this Court had construed them. And on that basis, and on its own motion, held that all of the reissued claims were invalid, including claims that everyone agreed were no broader than the original claims. Would it be fair to say that your client went to the PTO in an effort to get them to overrule our claim construction? No, I don't think it would be fair to say that, Your Honor. Didn't they go before the date of the appeal? Exactly. That's one reason why it certainly was not an effort to overrule this Court's claim construction. And this is not about... But that's what you're saying the PTO effectively did, right? No, not at all, Your Honor. And that, I think, is a misconception in the way, at least, the other side has argued the case. It's not about overruling this Court's claim construction. There's no question that where litigation is finally resolved and no longer pending, all claims have been resolved, that the Court's claim construction decisions have stare decisis effect and are binding. But that's not this case. This case is a pending case. But they're also binding as a matter of collateral estoppel, right? Or under the mandate. Well, but there are exceptions to the mandate rule, as this Court has recognized in a couple of recent cases. And one of those is where there is new evidence that is fundamentally inconsistent with the evidence that was presented before. Now, on the... And that, I think, goes to this question about overruling the Court's construction. We are not saying that the PTO's construction of the very high mechanical resistance limitation overrules this Court's construction. What we are saying is that it's new evidence that in a pending, non-final case ought to be considered, because claim construction can still be revisited as long as the case is still pending. Well, let me ask you this. Broadening of the RA-153 hasn't been before this Court before. That's correct, Your Honor. So, the mandate rule only binds as to those issues which are actually before the appellate court, right? Correct. Taking that wide reasoning backwards, then it doesn't apply here. Well, I believe that's correct, Your Honor. But now, in candor, I will say, obviously, any time that there is an argument about broadening, whether a reissued claim broadens the claim, there are two parts to that analysis. One is, what does the reissued claim mean? What does it cover? And what does the original claim mean? What did it cover? Well, didn't we address what the original claim meant? Exactly. And that's why I was being candid, Your Honor. You certainly did. But, again, because... And I do think... Well, and I think it's of a piece with the mandate rule, Your Honor. And our point is, it's certainly true that ordinarily where this Court renders a claim construction or approves a claim construction on appeal, it's law of the case. It's subject to the mandate rule for further proceedings. But there are exceptions. In Banks v. United States, this Court recently recognized that. Did the prior claim construction rely on only intrinsic evidence, or did we have to go to extrinsic evidence to reach it? I believe that this Court relied primarily on intrinsic evidence, but it also... The opinion did discuss extrinsic evidence. If we relied only on extrinsic evidence... Well, I'm sorry. Only on extrinsic... Only extrinsic evidence. Intrinsic. Sorry. I may have left out my initial syllable. If we relied only on intrinsic evidence in that first claim construction and thought that that was proper, why is this new evidence even relevant? Isn't it extrinsic evidence? No, I don't think it is extrinsic evidence, pardon me, because what you have is a PTO construction of the identical claim language. That is normally considered intrinsic evidence, what the PTO during prosecution said about a claim. Now, certainly had there been no prior appellate decision, and this was just coming up for the first time with the reissue claims and a broadening challenge, what the PTO had to say about the meaning of the reissue claims and the meaning of the original claims would be highly relevant. There would be no argument that that shouldn't be considered and that shouldn't have a bearing on the Court's decision. So the question is, does the fact that there was an appeal that vacated the claim construction in part, not this part admittedly, but in part, and sent it back for further proceedings on infringement and validity, does that somehow mean that the prior construction cannot be revisited under any circumstances? But do you have any cases, you say that this is an exception to the law of the case, is there any case that considered after-generated evidence in determining whether the original decision was correct? Or are they all cases in which there was additional evidence that pre-existed the determination that was then later discovered? I think the case, pardon me, Your Honor, in our opening brief, we cite a number of mandate law of the case decisions from other circuits. Admittedly, not this circuit, not claim construction, but those cases involve both pre-existing evidence that had not been discovered and newly-generated evidence that came into existence only after the fact. What's an example of a case with newly-generated evidence? Well, I don't have those cases at my fingertips. I don't have the names at my fingertips, but I believe there was the, I think it was the Ninth Circuit case that we discussed about whether a party was able to intervene, and there was new evidence that came into existence after the fact that allowed revisiting the prior decision. And the cases that... Where do you discuss that in your brief? I'm sorry? Where do you discuss that in your brief? I don't have the page at my fingertips, but it is in that section of the blue brief. It's in your brief. You really are supposed to... Well, I will get that brief, Your Honor. While you're looking... Yes. The PTO is not bound by law in the case, is it? That's correct, Your Honor. It is not. In fact, in the Fresenius case, this court said PTO in reexamination proceedings is not collaterally estopped to reach a conclusion different than this court has, as long as that litigation is still pending and it has not been finally resolved, because at that point, obviously, stare decisis kicks into effect. The Ninth Circuit case I was talking about, Your Honor, is at page 36 of the blue brief, the Benny v. Meechan case. And in the other... For example, the Apley case in the Eighth Circuit, the court didn't discuss whether the evidence had existed before or was newly discovered, but in the cases that identify new evidence as an exception to the mandate rule, they don't draw a distinction between whether the evidence came into existence afterwards... Is it fair to say you're not able to identify a case in which the evidence was newly generated after the decision? I thought I did, the Ninth Circuit case, Your Honor, I believe. What new evidence was generated after the decision? I would have to go back and look at the opinion to say specifically. But, Your Honor, let me make a comment about this. It is a requirement of the new evidence exception to the mandate rule that the evidence could not have been presented earlier, which clearly contemplates evidence that couldn't be presented earlier because it didn't exist. And I would also... It's admittedly not binding on this... It seems to me there's a difference between evidence that wasn't discovered or couldn't have been discovered and evidence that you affirmatively go out and generate to challenge the prior claim construction of ours. I mean, if we agree with you, every time we do a claim construction and send it back, the party that is adverse to it is going to run to the PTO and try to get it changed. That seems to me to allow for a substantial distortion of the system. Well, Your Honor, I think that's a fair point. But you have to, I think, consider the fact that the circumstances here are very narrow. You had a case go up on appeal. The court reversed the claim construction in part, affirmed it in part, sent it back for new proceedings on both infringement and validity. Am I not correct that the request to the PTO came before the appeal? Yes, the request to the PTO came after the jury verdict. So after the district court's claim construction that was adverse to you. After the district court's claim construction that was adverse to us. Now, I think it's worth noting, Your Honor, that, again, that was before the appeal, and there were two district court claim constructions that were adverse to us. The reissue, by adding dependent claims, really addressed both of those. And there's no question that, as to the one that this court reversed, that there was no broadening and there's nothing inappropriate about that. I say this is a very narrow circumstance, but don't we reverse in part and affirm in part claim constructions up here all the time? You do, Your Honor. And so this could happen in almost every single claim construction appeal? Well, I don't think so, because what you have here is identical claim language being considered by the PTO with an identical specification. That is very rarely going to happen, I think. Why is it going to be rare? I mean, if you have a claim construction that's adverse, you go back and you try to get a reissue patent that redefines the claim. Well, again, Your Honor, I think, first of all, there is a presumption that the PTO is doing its job properly. Did they do their job properly here? In the reissue, I believe they did. Yes, Your Honor. So if they did that in the next case, they'd be doing their job properly? Well, not necessarily, Your Honor, because here, remember, the specification specifically called out the 1,000 megapascal mechanical resistance as an object of the invention. Now, the panel disagreed with that or concluded that that didn't support our construction in the first case. But the PTO didn't make this up out of whole cloth. And, in fact, in the reissue application, the applicants specifically directed the PTO's attention to that portion of the specification in support for that claim. If I might, very briefly, if I could talk about claims 24 and 25, those are the claims that everyone agrees were not broadened. They specifically call out 1,500 megapascal. In fact, the defendants in their motions in the district court didn't even ask the district court to hold those claims invalid and said that those claims, in fact, would be less valid, at least as to broadening, and could be addressed later. The district court, on its own motion, as a matter of policy, held those claims invalid. That is contrary to the statute, which several statutes, Section 282, 288, 253, all say that each claim has to be considered independently and the invalidity of one claim does not affect the validity of others. It's also contrary to decisions of this court, such as Hewlett-Packard, in which some claims should not have been granted in reissue the court held, but that that did not invalidate other claims. It's also contrary to the court's decision in MBO Laboratories. In that case, the district court had held that certain reissue claims had been improperly broadened in violation of the recapture rule, and on that basis held all of the reissue claims invalid. On appeal, this court agreed about the claims being broadened in violation of the recapture rule, but held that it was error to hold the other claims invalid on that basis and reversed that part of the decision. So it's very clear, we think, that claims 24 and 25 ought to stand, regardless of what the court determines with respect to claims 1 through 23. If the court has no further questions at this time, I'll save the rest of my time for rebuttal. Okay. Thank you. Mr. Sykes. Thank you, Your Honor, and I'm here on behalf of all of the defendants. Let me start with a question that this court asked, which is whether or not Arslan and Tal here went to the PTO to overhaul this court's claim construction. We believe the answer there is clearly yes. It began with an attempt, of course, to overhaul the district court's claim construction, and then because the reissue was drawn out past not only this court's decision in November, but in denial of Arslan and Tal's request for a rehearing on this issue, it then attempted to overhaul this court's. Wait a minute. This court's claim construction came after they filed the application for reissuance. It came after they filed the application. Excuse me, Your Honor. It came after they filed, but the reissue was not issued until after this court. Well, how is that? I mean, are you saying that they asked or asked the PTO to delay? No. What I'm saying is they could have at any point after this court ruled, pulled the reissue from issue and adopted a reissue that was narrower only, and instead not only did they obtain the broader reissue, they went into the marketplace immediately thereafter and said, now we can go down to 1,000 MPA. They were enforcing broader claims, and one doctrine. You say on page 8 of your library, legal ruling, Art 4 filed a reissue with the goal of obtaining broader claims. That's not true. Well, I think what we said is, and I apologize, Your Honor, we were inelegant, but what we're saying is after the district court ruled and after they lost in court, then they had a legal ruling from the district court. The reissue was started after the district court's claim construction. Well, after the district court's claim construction, Your Honor. The timing here is that the district court construed the claims in November, I'm sorry, in December of 2010. The jury court was on January 14th of 2011. The reissue application was filed in August of 2011. R.C. Mitchell then appealed, and again, in terms of the appeal, this court announced its decision on November 30th of 2012. R.C. Mitchell continued to pursue its reissue. The notice of allowance in the reissue was in February of 2013. Well after this court's decision, the court denied R.C. Mitchell's petition for rehearing or rehearing en banc on March 20th of 2013, a month after that. What affirmative action did R.C. take before the PDO to continue its application? And I apologize, Your Honor, I don't have the whole prosecution history with me, but they accepted, among other things, they certainly, after this court's decision, they continued to pursue the claims they had, including Claim 23, which was broadening. That is, you say they didn't withdraw it. They didn't withdraw it, and then after the notice of allowance, they paid the issue fee. And they issued it knowing that it was broadened what this court had done. And one doctrine that you did not hear from Arcelor that is really critical here, we think, is simple stare decisis. This court announces claim construction as a matter of law. And it announces it, as the court has said, the national stare decisis effect that this court's decision on claim construction has. And this court has said, the panel having ruling as a precedential holding of the court is a statement of the law binding in future cases before the same court or another court owing obedience to its decisions. When this court said as a matter of law that the original 805 patent was limited to 1500, it announced that for the whole nation. And it was binding on the PTO. It was binding on district courts. It was binding on a subsequent panel, including this panel. Are Claims 24 and 25 consistent with our claim construction? The Claims 24 and 25 are no broader than the original claims. However, there's two defects with Claims 24 and 25. It's important to recognize. The first is, Section 251, the reissue prohibition on broadening, speaks to the reissue patent as a whole. It says, no reissue patent shall be granted, enlarging the scope of the claims of the original patent. And Arcelor has admitted this in their blue brief at page 31.  So in your view, if any individual claim in a reissue patent is broader, the entire patent goes down? Well, there's two caveats. The court has the power, the power, to invalidate a broadening issue of its entirety, which is important. As a punishment? Well, in order to have a remedial sanction in discouragement, as this court recognized in Quantum and the Free Patent.  A remedial sanction? In the Quantum and the Free Patent, the Quantum case, Your Honor, which was cited by the district court in its decision, this court noted, in that case, it was a broadening re-exam that now was scoring. Quantum case involved a question of whether, when they made a broader claim, whether they could reinstate the original claim, or whether we should send it back to narrow the claim. And Quantum case said, no, no, no. You made the broader claim. You're stuck with it. You can't narrow it. It didn't involve a situation where there was a separate claim corresponding to the original claim. Well, it was important, Your Honor, in that regard. That's true. That's true. Because Quantum was a re-exam. But what we have here is we do not have what are called carryover claims. And that's important. The counsel referred to the HP case, which involved what are called carryover claims. Those are claims that are identical and restated in the re-issue. So why should there be a difference between a carryover claim with the same and a new claim in re-issue that is the same as one of the original claims? Because the fact that it is not a carryover claim is inherent in the strategy here to undo this forced claim construction. The reason that claims 24 and 25 are new claims, and there's no dispute about that. They're written in italics. In the re-issue, they were added. They are not identical from the original. It's because the strategy that Arsenault did here was to go to the patent office and say they wanted to clarify. They didn't say broaden. Clarify the scope of the claims by redefining, by indirection, by redefining the term in Claim 1 of the original patent, very high mechanical resistance, for purposes of the re-issue, to be broader. They adopted a strategy that redefined all of the original claims. In order to have narrow claims, they then had to introduce new claims. It's part and parcel of the broadening here that they do not have carryover claims. They have new claims in the re-issue that happen to be narrower. But as the courts have recognized, when a party intentionally goes to the patent office to seek a broadening re-issue out of time, the sanction for that is the re-issue is invalid, is void. That's what the courts have said. And whether or not there would be power for the court to preserve carryover claims, the two issues here is the court chose in this case, and they have not challenged their discretion, not to preserve claims. And there are no carryover claims. These are new claims that came in with the re-issue. They may be narrower, but they are new claims that came in with the re-issue, and it is specifically a consequence of Arsenault's desire, through indirection, to broaden the original claims. And the district court found quite correctly that it was an intentional strategy by Arsenault to get around first its, and then after this court's decision. But it still sounds like you're saying that the district court can cancel the otherwise valid claims of the sanction. What the district court can do is cancel the re-issue. And that's what the statute provides. The statute provides that the re-issue should not have granted. And the case law suggests that a broad re-issue is void. So we do believe, Your Honor... The statute suggests that a broad re-issue is void, but if part of the re-issue is not broad, then why is it void as well? Because the statute doesn't speak of claims there, or even of the invention, which is often a statutory term. When we look at patent claims and determine whether they're valid or not, we look at them claim by claim, not as a whole. Not always, Your Honor. And interestingly, this court, in the Hewlett-Packard case, noted that the statute that provides for that, Section 253, does not appear to apply in the case of an improper re-issue. And that, in that case, it said specifically that Section 253, that is the section that talks about going claim by claim, this court said that that section offers little guidance because the invalidity resulting from a defective re-issue application may be viewed as affecting the entire patent and not merely any particular claim. And we think that's important, Your Honor, because if a party can go to the patent office after it has disappointed with a claim construction and do what happened here, introduced a patent claim for purposes of indirectly broadening the original claims and then obtain new, narrower claims, there is no sanction. There is no deterrent for doing what happened here. But the consequences in the marketplace are severe. What is lost when a party does that is the very purpose of Section 251, which is reposed to know when a patent is finally construed to its outer boundaries that a party cannot patent or cannot later go and seek to expand that. And that's not only the function of Section 251 in its statutory purpose, that's the very purpose in Markman behind making this court the final and legal arbiter of the scope of the claims. And that is entirely lost in this case. And if the only sanction is to strike down the broadened claims, then there is no deterrent. And that's what this Court recognized in the re-exempt context in Quantum, and that's what the District Court recognized below in its decision, and we believe that is right. Did you argue that to the District Court? What happened, Your Honor, is the case has been divided into two parts, a non-infringement part and then a validity part, and we addressed non-infringement. And we argued non-infringement. The Court, at the hearing on the motion, raised the possibility of whether or not it could, because of the broadening, invalidate the whole reissue. At that point, we agreed that it could, Your Honor. The matter was then briefed again after the Court issued its decision before its judgment where Arcelor briefed the question about the question of whether the other claims could be struck down, and the Court reaffirmed that the reissue was a whole. And as I read their blue brief, they have not challenged procedurally the fact that the Court chose in its power to strike down the whole reissue. And we think that was correct, Your Honor. There is a separate basis which we've raised in our brief for entering at least a judgment of non-infringement in the 050 case, the original case, and that's the fact that the District Court found, and it's clearly true in the record, that Arcelor had deduced no evidence showing infringement of accused products above the 1500, Your Honor. For AK Peel, they admitted AK Peel's product was below. That's an argument that's directed to the situation that 24 and 25 survived. Correct. Only if 24 and 24 survived, at a minimum in the 05 record. I'm recollecting some products over 1500 by at least one party. So Severstall, what happened is there is evidence that Severstall's product can be made into product above 1500. Their expert had, he treated it as part of the litigation and done that. But what Severstall came in on was a summary judgment and showed that they did not contradict this. There was no evidence that anyone actually in the marketplace had done that. So there was no evidence of actual infringement, let alone evidence that Severstall had induced anyone to do that. And the court found, on A15 and again on A17, that they had not contested the fact that there were no actual accused products within the 1500 limitation. And a judgment of non-infringement there would, of course, create the kind of finality we're talking about. But it's not necessarily reached there. What we have is a situation where, as a matter of law, this court has determined the outer boundaries of the original patent at 1500. The PTO was as bound by that legal ruling as the district court would be, as the subsequent panel would be, because that's the purpose of claim construction. And, you know, their going to the PTO doesn't change that. Now, even if they could, so we think as a matter of stare decisis, and this court's declarative case makes clear, that's final. They can't come in and even say that's clearly erroneous. Even if they could, this is not new evidence for two reasons. The first is, it's not evidence of the meaning of the original claims. As this court noted in Anderson, which was a broadening re-exam case, but the test for broadening is the same in both as the court recognized in Anderson. In fact, broadening is a legal question. You construe the original claim and the later claim. So Anderson's test makes it clear that construction of the original claim does not involve consideration of the post-grant proceedings. And what did the claim mean when it issued? And that makes sense for two reasons. The purpose of the claims is to give the public notice of what's being claimed at the time the patent issues. And while they cite some cases that suggest that later proceedings may narrow a claim, there's no suggestion that a party, a patent owner, can broaden claims through post-grant proceedings. So we just don't think it's evidence. Moreover, I note that this court, and this is at 700 F 1322, found that both the intrinsic and the extrinsic evidence supported the 1500. And new evidence isn't going to change that conclusion. And finally, it's not new. Whatever the proofs that have recently discovered or recently generated evidence, we're aware of no case in which a party itself can generate the new evidence that it then comes in with. But at a minimum, certainly they waited 10 years to file the reissue. The timing of the reissue could have done much earlier, whether immediately after the claim construction they weren't happy with it, or years before. And a party cannot rely on evidence that it controls, whose timing and generation it controls to say new evidence. So we think there are a lot of reasons here, Your Honor, why a party cannot use post-grant reissue proceedings to broaden a patent claim Is the clarification different than broadening? It is, and it's interesting, Your Honor. In Anderson, this Court dealt again with a patent owner who said, oh no, those post-grant proceedings, the re-exam there, which is clarifying the scope of the claims. And they said, you know, what the Court said is it's not about whether it's clarifying or not. It's a matter of construe the earlier claim, construe the post-grant claim, and compare them. This Court has already construed the original claim and said that it's limited to 1500. Arcelor admits Claims 1-23 in the reissue patent are broader. They claim down to 1000. So everything is settled. The scope of the original claim, the scope of the reissue claim, it's broader. The reissue is claiming subject matter outside the original claim. That's the test for broadening. So the reissue is clearly broadening. The question is, what's the sanction? Because the only claims that are not broader are new claims that were introduced as part of the strategy to broaden it. The Court acted properly and well within its power to invalidate the reissue as a whole. Thank you, Mr. Spence. Mr. Traley, you have a little over two minutes. There is no support in the cases or in the statute for this sanction notion that you've just heard so much about. The statutes are very clear. In particular, Section 253, which says the invalidity of one claim shall not render other claims invalid. Section 253 is in the chapter on reissues. In Vectra Fitness, this Court said it's closely related to Section 251, the reissue statute. So the notion that it doesn't apply here just does not make any sense. Now, Mr. Sykes said that he didn't hear me talk about stare decisis when I was up here before. There's a reason for that. Stare decisis does not apply here. This case is not final. Stare decisis applies only when a case is final. It does not apply here. What applies here as we've acknowledged is the mandate rule. There are exceptions to the mandate rule and one of those exceptions applies here. Now, as far as whether there's new evidence here, there are plenty of cases that consider subsequent proceedings as relevant to the meaning of the original claim. Microsoft versus Multitech is an example. Now, that was, as Mr. Sykes pointed out, an instance where the claim was narrowed by the subsequent proceedings, but that's a merits decision. That doesn't go to whether the evidence is relevant and should be considered. The case didn't involve the question of reopening a claim construction that had been arrived at. No, that's correct, Your Honor. That's correct. And again, that's going back to what the mandate rule means and whether there's an exception to it. And an exception is new evidence. So what I'm trying to address is whether there is, in fact, new evidence here. In House versus Medical Components, the Court held that consideration of reissue prosecution history was necessary to construe the relevant claim language whether the claim at issue was the original claim or the claim in the new patent, in the reissue patent, in Intellicent, which both parties cite for various... If we agree with you that this is new evidence... Yes. How... What standard of review would we look at the district court's decision not to accept it and not to change the law of the case? I think the... On that decision, I think it would be de novo review. Why? Because the district court was at least said she was construing the scope of the mandate, and what she didn't allow for was the fact that there are... She didn't even acknowledge that there are exceptions to the mandate rule. No, no, but you agree that the mandate covers this claim construction. I think... Yes. It seems to me that what you're arguing is the district court abused its discretion in not applying an exception to the mandate rule. Well, I don't... I don't know that that... I would view that as within the scope of whether the mandate rule applies, and so I don't think it's a discretionary decision. But let... I see I'm out of time. If I could have 10 more seconds. On Claims 24 and 25, the argument that they should be overturned can't be reconciled with the statute, as I said. It can't be reconciled with Bausch & Lomb or with MBO, and the Supreme Court's decision in Gage v. Herring is right on point. This court relied on it in the Hewlett-Packard Bausch & Lomb case. Thank you. Thank you, Mr. McCombs. Thank both counsel. The case is submitted.